# United States Court of Appeals
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

———

Argued November 7, 2024        Decided August 5, 2025

No. 23-7176

MICHAEL D. HURD, JR.,
APPELLANT

v.

DISTRICT OF COLUMBIA,
APPELLEE

———

Appeal from the United States District Court
for the District of Columbia
(No. 1:15-cv-00666)

———

*Douglas Friend Gansler* argued the cause for appellant. With him on the briefs was *John B. Howard Jr.*

*Caroline S. Van Zile*, Solicitor General, Office of the Attorney General for the District of Columbia, argued the cause for appellee. With her on the brief were *Brian L. Schwalb*, Attorney General, *Ashwin P. Phatak*, Principal Deputy Solicitor General, *Carl J. Schifferle*, Deputy Solicitor General, and *Sean Frazzette*, Assistant Attorney General.

Before: RAO and PAN, *Circuit Judges*, and GINSBURG, *Senior Circuit Judge*.

2

Opinion for the Court filed by *Circuit Judge* RAO.

RAO, *Circuit Judge*: Michael Hurd, Jr., was mistakenly released from prison after serving 15 months of a 42-month sentence. The District of Columbia Department of Corrections discovered this mistake four years later when Hurd was serving a sentence for a different crime. The Department of Corrections detained Hurd so that he could serve the remaining 27 months of his original sentence. Hurd alleges his reincarceration following an erroneous release was a violation of his substantive and procedural due process rights, and he seeks damages from the District of Columbia under 42 U.S.C. § 1983. The district court granted summary judgment to the District on both claims. We affirm.

I.

In 2005, Hurd pled guilty to one felony firearm charge and four misdemeanor firearm and drug possession charges. For the felony charge, he was sentenced to 15 months of imprisonment and a three-year term of supervised release. For the misdemeanor charges, Hurd was sentenced to an aggregate 27 months of imprisonment. Hurd was first placed in the custody of the Federal Bureau of Prisons to serve his felony sentence. When that sentence was complete, the Bureau of Prisons was supposed to transfer Hurd to the D.C. Jail to serve his misdemeanor sentence. Instead of transferring Hurd, however, the Bureau of Prisons mistakenly released him. Hurd completed his three years of federal supervised release in July 2010.

Less than one year later, he pled guilty to misdemeanor possession of marijuana, for which he was sentenced to nine days of incarceration in the D.C. Jail. While preparing to release Hurd, a Department of Corrections employee discovered that Hurd had never served the misdemeanor

portion of his 2006 sentence. The employee checked with his supervisor and confirmed that the appropriate action was to continue to detain Hurd to serve the remainder of his sentence. The Department of Corrections informed Hurd that his release from prison was erroneous and that he still had 27 months to serve for the 2006 misdemeanor convictions. Hurd was not provided a hearing to contest his reincarceration.

Soon thereafter, Hurd filed a petition for a writ of habeas corpus in D.C. Superior Court. He argued his 2006 sentence was satisfied when he was released from federal prison and discharged from supervised release. The court denied the petition, and Hurd appealed. Before the appeal could be heard, he finished serving the remainder of his sentence and was again released, at which point his appeal was dismissed as moot.

In May 2015, Hurd sued the District under 42 U.S.C. § 1983, alleging wrongful deprivation of liberty under the Fifth Amendment. Hurd maintained that the District deprived him of substantive due process "[b]ecause the actions of the District officials were egregious" and their "treatment of [him] shock[ed] the conscience." Hurd also claimed a violation of procedural due process because, by reincarcerating him without notice or a hearing, the District had followed "a custom and practice of over-detention of prisoners."

This is the third time this court has heard an appeal of Hurd's section 1983 action, and we need not recount the full procedural history again.[1] In the most recent remand, the

---

[1] In Hurd's first appeal, we reversed the district court's dismissal of Hurd's complaint, holding that his section 1983 action was not precluded by his prior habeas petition because damages were not available in his habeas proceeding and, further, that a prisoner released from prison early may have a protected liberty interest in certain circumstances. *Hurd v. District of Columbia*, 864 F.3d 671,

district court addressed the merits of Hurd's underlying constitutional claims. The court granted summary judgment to the District on the substantive due process claim, concluding that requiring Hurd to serve a lawfully imposed sentence did not "shock the conscience." The court also granted summary judgment to the District on Hurd's procedural due process claim. The court concluded, *inter alia*, that even if Hurd had a liberty interest that entitled him to a hearing before his reincarceration, his claim for damages was barred by the Supreme Court's holding in *Heck v. Humphrey*, 512 U.S. 477 (1994). Hurd now appeals.

This court has jurisdiction under 28 U.S.C. § 1291. We review grants of summary judgment de novo. Summary judgment is appropriate only if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

II.

Hurd brings his Fifth Amendment due process claims under 42 U.S.C. § 1983, which provides a cause of action for individuals whose federal constitutional rights have been violated by a state or municipal actor. To succeed on his section 1983 claim against the District, Hurd must prove both "a violation of his rights under the Constitution or federal law,"

---

679–82 (D.C. Cir. 2017). On remand, the district court granted summary judgment to the District on the separate ground that Hurd had failed to establish a municipal custom or policy as required for liability under section 1983. *Hurd v. District of Columbia*, 427 F. Supp. 3d 21, 30–34 (D.D.C. 2019). In Hurd's second appeal, we again reversed, finding a genuine dispute of material fact as to whether the District had an unconstitutional policy that caused Hurd's reincarceration without due process. *Hurd v. District of Columbia*, 997 F.3d 332, 337, 341 (D.C. Cir. 2021).

and "that the [District's] custom or policy caused the violation." *Warren v. District of Columbia*, 353 F.3d 36, 38 (D.C. Cir. 2004). Because Hurd has not demonstrated an underlying violation of his substantive due process rights and his procedural due process claim is barred by *Heck v. Humphrey*, we affirm the district court's grant of summary judgment.

## A.

Hurd first claims that the District violated his substantive due process rights because his abrupt reincarceration after several years at liberty was an egregious, conscience-shocking act.

As relevant here, the Supreme Court has held that the substantive component of the Due Process Clause "bars certain arbitrary, wrongful government actions regardless of the fairness of the procedures used to implement them." *Foucha v. Louisiana*, 504 U.S. 71, 80 (1992) (citation omitted). The Constitution, however, does not "impos[e] liability whenever someone cloaked with state authority causes harm." *County of Sacramento v. Lewis*, 523 U.S. 833, 848 (1998). Instead, only action that is "so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience" qualifies as "arbitrary in the constitutional sense." *Id.* at 847 n.8; *id.* at 846 (cleaned up). "[N]egligently inflicted harm is categorically beneath the threshold of constitutional due process." *Id.* at 849. "It is, on the contrary, behavior at the other end of the culpability spectrum that would most probably support a substantive due process claim; conduct intended to injure in some way unjustifiable by any government interest is the sort of official action most likely to rise to the conscience-shocking level." *Id.*

While our court has not previously considered a substantive due process challenge to erroneous release and subsequent reincarceration, the courts of appeals that have addressed the issue since *Lewis* have uniformly concluded that reincarceration in these circumstances generally does not violate substantive due process. *See Hawkins v. Freeman*, 195 F.3d 732, 746–47 (4th Cir. 1999) (en banc); *Bonebrake v. Norris*, 417 F.3d 938, 943 (8th Cir. 2005); *Vega v. United States*, 493 F.3d 310, 317 (3d Cir. 2007); *González-Fuentes v. Molina*, 607 F.3d 864, 885–86 (1st Cir. 2010); *Hughes v. Oliver*, 596 F. App'x 597, 599 (10th Cir. 2014). As the *en banc* Fourth Circuit explained, the "erroneous release … of prisoners is a surprisingly widespread and recurring phenomenon," and "the routine, seemingly invariable, executive practice has been to incarcerate" the individual once the error is discovered. *Hawkins*, 195 F.3d at 742–43 (referring to Gabriel J. Chin, *Getting Out of Jail Free: Sentence Credit for Periods of Mistaken Liberty*, 45 Cath. U. L. Rev. 403 (1996)). Because these administrative errors are "too frequently made ... to raise any presumption of arbitrariness 'in the constitutional sense,'" rectifying the error by requiring a prisoner to serve the remainder of a lawful sentence does not "shock the conscience." *Id.* at 744 (quoting *Lewis*, 523 U.S. at 846).

We join our sister circuits in holding that there ordinarily is no violation of substantive due process when the government reincarcerates a person who was erroneously released from prison before completion of his sentence. *See Hawkins*, 195 F.3d at 746; *Bonebrake*, 417 F.3d at 943. That general principle applies here where Hurd's initial release was the result of an ordinary mistake by the Federal Bureau of Prisons. When the Department of Corrections employee discovered a facially valid judgment showing Hurd had not served the remainder of his 2006 sentence, the employee contacted his supervisor to

confirm that continued incarceration was the proper course of action. The employee acted diligently to correct an error in the enforcement of an unserved sentence. Hurd's reincarceration in these circumstances does not come close to a violation of substantive due process.[2]

To support his claims, Hurd maintains that a mechanical application of *Lewis* is inappropriate in this context and that instead we should look to the reasoning of *United States v. Merritt*, 478 F. Supp. 804 (D.D.C. 1979). *Merritt* was grounded in a now outdated credit-for-time-at-liberty or "waiver of jurisdiction theory," a judicially created doctrine under which the government could, through inaction, forfeit its authority to reincarcerate a prisoner. *Id.* at 806. In *Merritt*, the court explained that "when a prisoner is released prior to service or expiration of his sentence through no fault or connivance of his own, and the authorities make no attempt over a prolonged period of time to reacquire custody," the government may "waive[] [its] jurisdiction" over him. *Id.* After such a waiver, any subsequent reincarceration for the same sentence is without authority and violates due process.

*Merritt* is of course not binding on this court, and we decline to adopt its reasoning, which is irreconcilable with the

---

[2] We have no occasion to consider whether in some extraordinary circumstances an individual might be able to demonstrate that reincarceration is "either a substantial infringement of state law prompted by personal or group animus, or a deliberate flouting of the law that trammels significant personal or property rights." *Elkins v. District of Columbia*, 690 F.3d 554, 562 (D.C. Cir. 2012) (cleaned up). There are no such extraordinary circumstances here, and nothing in the record suggests the District acted with animus or deliberate indifference to the law.

Supreme Court's subsequent decision in *Lewis*.[3] *Merritt* held that government action amounting to "more than simple neglect" could trigger a constitutional violation. 478 F. Supp. at 807. This standard is squarely at odds with the Supreme Court's holding in *Lewis* that "negligently inflicted harm is categorically beneath the threshold of constitutional due process." *Lewis*, 523 U.S. at 849. The framework from *Merritt* is built on degrees of carelessness, but the *Lewis* standard requires a different showing entirely: an abuse of power. As the Fourth Circuit explained when rejecting this same theory, even a higher standard of grossly negligent inaction, "fails to embody the full stringency" of *Lewis*'s "shocks the conscience" test because to shock the conscience, "an executive act must be not only 'wrong,' but egregiously so by reason of its abusive or oppressive purpose and its lack of justification by any government interest." *Hawkins*, 195 F.3d at 743–44 (reviewing history and demise of the doctrine espoused in *Merritt*). *Merritt*'s much less stringent standard is plainly foreclosed by *Lewis*.

Moreover, *Merritt*'s vague, multi-factor test, which hinges on an undefined "prolonged period of time" at liberty, is highly indeterminate and fails to provide government actors with clear notice of what conduct is prohibited. 478 F. Supp. at 806. Such indeterminacy would cause "standards of official conduct … to remain uncertain, to the detriment both of officials and individuals." *Lewis*, 523 U.S. at 841 n.5. The "shocks the conscience" test serves as a crucial threshold to preserve the

---

[3] In a previous appeal we merely assumed without deciding that the *Merritt* test applied for purposes of reviewing the district court's application of that test. *Hurd*, 864 F.3d at 686. We are not bound by that assumption here.

"constitutional proportions of constitutional claims, lest the Constitution be demoted to … a font of tort law." *Id.* at 847 n.8.

The District's conduct does not rise to the conscience-shocking level required to establish a violation of substantive due process. Viewing the evidence in the light most favorable to Hurd, his reincarceration to serve a lawful sentence was not "arbitrary in the constitutional sense" and his substantive due process claim fails. *Id.* at 846 (cleaned up).

B.

Hurd next contends the District violated his procedural due process rights by reincarcerating him without notice and a hearing. Hurd claims that he was prejudiced by this denial of process because if he had been given a hearing, he could have advanced several theories of overincarceration to show he was entitled to release or, at a minimum, to a shorter period of confinement. This alleged overincarceration, he contends, entitles him to damages.

"A procedural due process claim consists of two elements: (i) deprivation by state action of a protected interest in life, liberty, or property, and (ii) inadequate state process." *Reed v. Goertz*, 143 S. Ct. 955, 961 (2023). An individual claiming a liberty or property interest protected by the Due Process Clause "must have a legitimate claim of entitlement to it." *Ky. Dep't of Corrections v. Thompson*, 490 U.S. 454, 460 (1989). In general, a person with a valid conviction lacks a protected liberty interest in being free from confinement because "the conviction, with all its procedural safeguards, has extinguished that liberty right." *Greenholtz v. Inmates of Neb. Penal & Correctional Complex*, 442 U.S. 1, 7 (1979).

In a previous appeal of this case, we stated that "[a] prisoner who is released from prison early does in certain

circumstances have a protected liberty interest." *Hurd*, 864 F.3d at 682. But we ultimately left open the questions of whether a liberty interest exists in these circumstances or whether such a liberty interest would require a pre-deprivation hearing. We need not decide those questions here. Even assuming arguendo that Hurd possessed a liberty interest, his procedural due process claim is barred by *Heck* and is not cognizable under section 1983.

The favorable-termination rule announced in *Heck* provides that a plaintiff seeking damages under section 1983 for an "allegedly unconstitutional conviction or imprisonment," must first "prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal … , or called into question by a federal court's issuance of a writ of habeas corpus." 512 U.S. at 486–87. This rule prevents "collateral attacks on criminal judgments through civil litigation." *McDonough v. Smith*, 139 S. Ct. 2149, 2156–57 (2019). If "a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence," and the sentence has not "already been invalidated," the claim "is not cognizable under [section] 1983." *Heck*, 512 U.S. at 487.

Hurd's claim for damages is entirely dependent on his theories that he was overincarcerated.[4] Even if one of those legal theories were valid, a judgment in Hurd's favor would necessarily imply the invalidity of his confinement. Hurd maintains that he is not challenging his original conviction or

---

[4] As the district court explained, Hurd's theories that the lack of a pre-deprivation hearing prevented him from getting his affairs in order and caused emotional distress were underdeveloped and therefore forfeited.

sentence, only his reincarceration. But this is a distinction without a difference. The reincarceration was for the purpose of serving his original, lawful sentence. To recover damages for his confinement, Hurd must show that the original sentence—or at least the duration of confinement imposed by it—has been set aside. He has not done so. Indeed, his habeas petition challenging the reincarceration was denied. Because Hurd cannot satisfy the favorable termination requirement, his claim is not cognizable under section 1983.[5]

\* \* \*

Hurd was undoubtedly disadvantaged by his mistaken release and subsequent reincarceration. But the Due Process Clause does not impose liability whenever the government causes some harm, and it does not prevent the government from reincarcerating an individual to serve a lawful sentence. For the foregoing reasons, we affirm the judgment of the district court.

*So ordered.*

---

[5] Hurd cannot sidestep *Heck*'s favorable-termination rule by requesting nominal damages. *Edwards v. Balisok*, 520 U.S. 641, 648 (1997) (explaining that a claim for damages attributable to an unconstitutional procedure, even if only nominal damages, is not cognizable under section 1983 if it necessarily implies the invalidity of the confinement).